UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| AMANDA CATHERINE TOTH, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) CAUSE NO. 1:17-cv-00516-SLC |
| COMMISSIONER OF SOCIAL SECURITY, *sued as Nancy A. Berryhill, Acting Commissioner of Social Security,* | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Amanda Catherine Toth appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for disability insurance benefits ("DIB").[1] (DE 1). For the following reasons, the Commissioner's decision will be REVERSED, and the case will be REMANDED to the Commissioner for further proceedings in accordance with this Opinion and Order.

### I. FACTUAL AND PROCEDURAL HISTORY

Toth applied for DIB in May 2014, alleging disability as of September 25, 2009. (DE 10 Administrative Record ("AR") 153-60). The Commissioner denied Toth's application initially and upon reconsideration. (AR 91-98). After a timely request, a hearing was held on March 22, 2016, before Administrative Law Judge William D. Pierson (the "ALJ"), at which Toth, who was represented by counsel; Toth's mother; and a vocational expert testified. (AR 28-68). On September 15, 2016, the ALJ rendered an unfavorable decision to Toth, concluding that she was

---

[1] All parties have consented to the Magistrate Judge. (DE 13); *see* 28 U.S.C. § 636(c).

not disabled because despite the limitations caused by her impairments, she could perform a significant number of jobs in the economy. (AR 10-21). Toth's request for review was denied by the Appeals Council (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

Toth filed a complaint with this Court on December 22, 2017, seeking relief from the Commissioner's decision. (DE 1). In the appeal, Toth alleges that the ALJ: (1) improperly evaluated whether she met listing 12.05C, intellectual disability; and (2) failed to incorporate the ALJ's finding of moderate deficits in maintaining concentration, persistence, or pace into the hypothetical posed to the vocational expert at step five. (DE 18 at 11-22).

At the time of the ALJ's decision, Toth was 26 years old (AR 21, 154) and had a certificate of completion from high school, which involved special education classes (AR 200). She was working part time as a pet bather at a pet salon five to six days a week, and had been performing this work since 2009. (AR 239, 267, 270). Toth alleges disability due to: intellectual disability, mild; depressive disorder; general anxiety disorder; bipolar disorder; and Coffin-Lowry Syndrome.[2] (DE 18 at 2).

---

[2] Coffin-Lowry syndrome is described as follows:

> Coffin-Lowry syndrome is a condition that affects many parts of the body. The signs and symptoms are usually more severe in males than in females, although the features of this disorder range from very mild to severe in affected women.
>
> Males with Coffin-Lowry syndrome typically have severe to profound intellectual disability and delayed development. Affected women may be cognitively normal, or they may have intellectual disability ranging from mild to profound. . . .
>
> Most affected males and some affected females have distinctive facial features including a prominent forehead, widely spaced and downward-slanting eyes, a short notes with a wide tip, and a wide mouth with full lips. . . . Soft hands with short, tapered fingers are also characteristic of Coffin-Lowry syndrome. Additional features of this condition include short stature, an unusually small

2

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

---

head (microcephaly), progressive abnormal curvature of the spine (kyphoscoliosis), and other skeletal abnormalities.

*Your Guide to Understanding Genetic Conditions*, U.S. National Library of Medicine, https://ghr.nlm.nih.gov/condition/coffin-lowry-syndrome (last visited January 8, 2019).

## III. ANALYSIS

*A. The Law*

Under the Act, a claimant is entitled to DIB if she establishes an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[3] *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 404.1520. An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* (citation omitted).

---

[3] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite her limitations. 20 C.F.R §§ 404.1520(e), 404.1545(a). The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. § 404.1520(e).

The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

## B. The Commissioner's Final Decision

On September 15, 2016, the ALJ issued a decision that ultimately became the Commissioner's final decision. (AR 10-21). At step one, the ALJ concluded that Toth had not engaged in substantial gainful activity after her alleged onset date of September 25, 2009. (AR 12). At step two, the ALJ found that Toth's borderline intellectual functioning arising from Coffin-Lowery Syndrome was a severe impairment. (AR 12). At step three, the ALJ concluded that Toth did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 12-14).

Before proceeding to step four, the ALJ determined that Toth's symptom testimony was not entirely consistent with the medical evidence and other evidence of record. (AR 15). The ALJ then assigned Toth the following RFC:

> [T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant [is limited] to only occasional decision making and only occasional changes in the work setting. The claimant can tolerate predictable changes in the work environment that allows her to sustain a flexible and goal oriented pace. The claimant is limited from fast-paced work such as assembly line production work with rigid or strict productivity requirements. The claimant is limited to work that involves only simple, routine and repetitive tasks that could be learned through short demonstration and up to thirty days. The claimant can maintain the concentration required to perform simple tasks. The claimant can remember simple work-like procedures. The claimant can make simple work-related decisions. The claimant can read at . . . least the fourth grade level. She can read lists and address labels, but is not to perform work requiring extensive manual reading.

(AR 14). Based on the assigned RFC and the vocational expert's testimony, the ALJ found at

5

step four that Toth was unable to perform her past relevant work, commenting that this finding was "generous in nature" since she was still performing such work. (AR 20). At step five, the ALJ found that Toth could perform a significant number of other jobs in the economy, including cleaner/housekeeper and assembly positions. (AR 21). Therefore, Toth's application for DIB was denied. (AR 21).

### C. Listing 12.05C

Toth first argues that the ALJ erred in his step-three analysis by finding that she did not meet or equal Listing 12.05C, intellectual disability. For the following reasons, the ALJ's step-three finding will be remanded.

The Court must apply the version of Listing 12.05C that was in effect at the time the ALJ issued his decision, that is, on September 15, 2016.[4] The Listing provides in relevant part:

> 12.05 Intellectual Disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.05 (2016). "[T]he structure of Listing . . . 12.05 indicates that a claimant must show *both* that [s]he meets the listing's definition of [intellectual

---

[4] Listing 12.05C no longer exists due to a rule change effective January 17, 2017. A claimant must now meet either Listing 12.05A or Listing 12.05B. *See* Revised Medical Criteria for Evaluating Disorders, 81 Fed. Reg. 66138-01, 2016 WL 5341732 (Sept. 26, 2016).

disability] *and* that [s]he meets the required severity by satisfying the requirements in either A, B, C, or D." *Smallwood v. Astrue*, No. 2:08-cv-85, 2009 WL 2475272, at *8 (N.D. Ind. Aug. 11, 2009) (emphasis in original) (citing *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)).

Therefore, when boiled down, to meet Listing 12.05C, a claimant must show: (1) significantly subaverage intellectual functioning with deficits in adaptive functioning prior to age 22; (2) a valid verbal, performance, or full-scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Charette v. Astrue*, 508 F. App'x 551, 553 (7th Cir. 2013); *Adkins v. Astrue*, 226 F. App'x 600, 605 (7th Cir. 2007); *Novy v. Astrue*, 497 F.3d 708, 709 (7th Cir. 2007); *Anderson v. Astrue*, No. 4:10-cv-91, 2011 WL 4899990, at *5 (N.D. Ind. Oct. 14, 2011); *Smallwood*, 2009 WL 2475272, at *8.

Here, at step three the ALJ articulated the following reasoning when concluding that Toth did not meet Listing 12.05C:

> [T]he "paragraph C" criteria of [L]isting 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The claimant has an IQ of 65 but the medical evidence does not establish another impairment that imposes additional and significant work-related limitations of function. This is more fully set forth below under Finding 5.

(AR 14 (internal citation omitted)). Later in his decision then, the ALJ explained his rationale for concluding that Toth's depression and anxiety were not severe impairments for purposes of step two and the third prong of Listing 12.05C. (*See* AR 14-20).

The parties do not dispute that Toth satisfies the second prong of Listing 12.05C, as the record includes Wechsler Adult Intelligence Scale, Fourth Edition testing in May 2014 that

7

revealed a full-scale IQ of 65. (AR 379). Toth's assertion of error, rather, centers on the ALJ's finding about the third prong of Listing 12.05C. Toth contends that the ALJ erred when finding that her depression and anxiety were not "severe" impairments such as to constitute another impairment that imposes an additional and significant work-related limitation of function for purposes of Listing 12.05C.

Courts have found that an ALJ's finding of a "severe" additional physical or mental impairment at step two, in turn satisfies the third prong of Listing 12.05C. *See Smith v. Colvin*, 9 F. Supp. 3d 875, 884 (E.D. Wis. 2014) (explaining that an ALJ's finding of a "severe" additional physical or mental impairment at step two satisfies the third prong of Listing 12.05C); *Miller v. Colvin*, No. 3:13-CV-380 JD, 2014 WL 4105034, at *1 n.3 (N.D. Ind. Aug. 19, 2014) (collecting cases); *Washington v. Astrue*, No. 2:10-cv-367, 2012 WL 3108872, at *7 (N.D. Ind. July 31, 2012) (same); *Frazier v. Astrue*, No. CV-09-3063-CI, 2010 WL 3910331, at *5 (E.D. Wash. Oct. 4, 2010) (same); *see also* SSR 02-1p, 2002 WL 34686281, at *4-5 (Sept. 12, 2002) (explaining that if obesity is found to be a "severe" impairment at step two, then it satisfies the third prong of Listing 12.05C). Therefore, the Court will focus on the ALJ's step-two finding that was silent as to Toth's depression and anxiety and stated that Toth had just one severe impairment, borderline intellectual functioning. (AR 12).

"The Step 2 determination is a *de minimis* screening for groundless claims . . . ." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (citation and internal quotation marks omitted); *see also Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016). "An impairment is 'not severe' only if it is 'a slight abnormality' that has 'no more than a minimal effect on the ability to do basic work activities[.]'" *Meuser*, 838 F.3d at 910 (alteration in original) (quoting

8

SSR 96-3p, 1996 WL 374181 at *1 (July 2, 1996)); *see also O'Connor-Spinner*, 832 F.3d at 697. "When evaluating the severity of an impairment, the ALJ assesses its functionally limiting effects by evaluating the objective medical evidence and the claimant's statements and other evidence regarding the intensity, persistence, and limiting effects of the symptoms." *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016) (citation omitted).

The Seventh Circuit Court of Appeals in *O'Connor-Spinner* reversed an ALJ's step-two finding of non-severe where the claimant had a diagnosis of "major depression, recurrent severe." 832 F.3d at 693. In doing so, the Court stated: "[The step-two] determination is not supported by substantial evidence and, indeed, strikes us as nonsensical given that the diagnosis, *by definition*, reflects a practitioner's assessment that the patient suffers from 'clinically significant distress or impairment in social, occupational, or other important areas of functioning.'" *Id*. at 697 (emphasis added) (quoting Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 679-80 (4th ed. text rev. 2000)). Similarly, in *Meuser*, the Seventh Circuit criticized the ALJ's step-two finding that Meuser's schizophrenia was non-severe, stating that the Court had "difficulty imagining how an uncontested diagnosis of schizophrenia . . . could *not* survive Step 2." 838 F.3d at 910.

Here, as Toth catalogues in her brief (DE 18 at 11-17), the record reveals that after her alleged onset date of September 25, 2009, Toth experienced periods of 12 months or more where her symptoms of depression and anxiety were more than a slight abnormality. In August 2010, Dr. Prevesh Rustagi, a psychiatrist, considered Toth's report of a long history of anxiety and unpredictable, escalating mood swings, and he diagnosed her with bipolar disorder, unspecified, and generalized anxiety disorder. (AR 319-20). He assigned her a Global Assessment of

9

Functioning ("GAF") score of 55, indicative of moderate symptoms.[5] (AR 320). Dr. Rustagi treated Toth regularly through February 2012 for medication management, documenting generally that Toth had a good response to her medication regime, but her medications were adjusted from time to time for complaints of irritability, anger, and anxiety. (*See* AR 297-314). At her last visit in February 2012, Toth reported irritability and anxiety, and her mother expressed concern whether she was helping Toth by mediating in her employment or whether she was enabling Toth. (AR 297).

In May 2012, Toth began seeing Elizabeth McGee, a psychiatric nurse at Psychiatric Care, for medication management; Toth continued these visits through April 2015. (AR 399-414). She was diagnosed with a bipolar disorder and a generalized anxiety disorder, and was assigned a current and highest past-year GAF of 59, again indicative of moderate symptoms. (AR 393). Treatment focused on coping skills and stress management. (AR 393, 405, 414). At several visits, Toth was noted to have impulsive behavior, magical thinking, interpersonal relationship problems, and emotional problems, but no depression or anxiety. (*See, e.g.*, AR 406, 409-10). At other visits, however, Ms. McGee documented that Toth had symptoms of anxiety, irritability, and lability. (*See, e.g.*, AR 403, 410-11).

In May 2014, Toth saw Dr. Andrew Miller, a psychologist, for purposes of her DIB

---

[5] GAF scores reflect a clinician's judgment about the individual's overall level of functioning. Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed., text rev. 2000). A GAF score of 51 to 60 reflects moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Id.*

"The American Psychiatric Association no longer uses the GAF as a metric." *Spencer v. Colvin*, No. 13-cv-1487, 2015 WL 684545, at *17 n.5 (C.D. Ill. Feb. 17, 2015) (citing Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 16 (5th ed. 2013)). However, several clinicians of record used GAF scores in assessing Toth, so they are relevant to the ALJ's decision. *See id.* (citing *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)).

application. (AR 378-82). Dr. Miller concluded that Toth exhibited symptoms of an anxiety disorder, centered on thunderstorms; that she required some support from others to accomplish her daily tasks; and that she used to deal with depression but did not display any current depressive symptoms. (AR 382). Dr. Miller diagnosed Toth with a depressive disorder not otherwise specified; specific phobia, natural environment type; and an intellectual disability, mild. (AR 382). He assigned Toth a current and highest past-year GAF score of 58, reflective of moderate symptoms. (AR 382).

In June 2014, Dr. William Shipley, a state agency psychologist, reviewed Toth's record and found that Toth had a medically determinable impairment as to Listing 12.04, affective disorders. (AR 76). Dr. Shipley opined that Toth had moderate restrictions in daily living activities; moderate difficulties in maintaining concentration, persistence, or pace; mild difficulties in maintaining social functioning; and no repeated episodes of extended decompensation (AR 76), resulting in a "severe" impairment. *See Dorrance v. Colvin*, No. 3:12-CV-540-CAN, 2013 WL 6839909, at *5 (N.D. Ind. Dec. 27, 2013) ("The ratings in the functional areas correspond to a determination of severity of mental impairment. If the ALJ rates the first three functional areas as none or mild and the fourth area as none, then generally the impairment is not considered severe. Otherwise, the impairment is considered severe . . . ." (citing 20 C.F.R. § 404.1520a(d)). Dr. Shipley concluded that despite her severe mental impairment, Toth was capable of performing unskilled work without special considerations. (AR 76). Dr. Kenneth Neville, another state agency psychologist, affirmed Dr. Shipley's opinion in September 2014. (AR 84-85).

Considering the foregoing medical evidence, and the Seventh Circuit precedent discussed

above, the ALJ's finding at step two that Toth's depression and anxiety were non-severe impairments is dubious. As already explained, courts have concluded that an ALJ's finding of a "severe" additional physical or mental impairment at step two satisfies the third prong of Listing 12.05C. *See Smith*, 9 F. Supp. 3d at 884; *Washington*, 2012 WL 3108872, at *7. Here, the record arguably reflects that Toth's anxiety and depression were more than "a slight abnormality" for a period of 12 months or more after her alleged onset date. *Meuser*, 838 F.3d at 910 (alteration in original) (quoting SSR 96-3p, 1996 WL 374181 at *1); *see also O'Connor-Spinner*, 832 F.3d at 697. Therefore, Toth's challenge to the ALJ's finding as to the third prong of Listing 12.05C has some traction.

But to meet Listing 12.05C, Toth still has to show that she satisfies its first prong—significantly subaverage intellectual functioning with deficits in adaptive functioning prior to age 22. The ALJ did not discuss this prong in any detail (*see* AR 16); nor did the parties address it in their briefs.

The Seventh Circuit has explained that the term "deficits in adaptive functioning" denotes an "inability to cope with the challenges of ordinary everyday life." *Novy*, 497 F.3d at 709 (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 42 (4th ed. text rev. 2000)). "As the Seventh Circuit noted, '[i]f you cannot cope with those challenges, you are not going to be able to hold down a full-time job.'" *Youngblood v. Colvin*, No. 13-cv-209, 2014 WL 841528, at *3 (E.D. Wis. Mar. 4, 2014) (alteration in original) (quoting *Novy*, 497 F.3d at 709). The Seventh Circuit does "not require an ALJ to use a specific measurement method" when assessing "deficits in adaptive functioning." *Charette*, 508 F. App'x at 553 ("Because the ALJ examined Charette's ability to cope with the challenges of daily

12

life, she applied the correct legal standard." (citing *Novy*, 497 F.3d at 710)). "[W]hile a qualifying IQ score may be *prima facie* evidence that an applicant suffers from 'significantly subaverage general intellectual functioning,' § 12.05, there is no necessary connection between an applicant's IQ scores and her relative adaptive functioning." *Youngblood*, 2014 WL 841528, at *5 (collecting cases).

Because the ALJ rejected Listing 12.05C on the third prong, he did not adequately evaluate the first prong—Toth's limitations and her "adaptive ability to overcome them, including [her] ability to reach out to [family] for help." *Charette*, 508 F. App'x at 554 (concluding that claimant lacked deficits in adaptive functioning and adequately overcame his intellectual limitations where he lived independently, socialized with others, and worked shorter-term jobs obtained through family and friends); *see Adkins*, 226 F. App'x at 605 (concluding that the claimant failed to demonstrate deficits in adaptive functioning where he was gainfully employed until the age of 41 without material complaints from his employers and the record contained only minimal evidence about his cognitive and medical state before age 22 other than his own testimony that he completed school only through the eighth grade); *Novy*, 497 F.3d at 710 (relying upon claimant's daily living activities, living circumstances, and work history when finding that she did not satisfy the adaptive deficits requirement of Listing 12.05(C)); *Witt v. Barnhart*, 446 F. Supp. 2d 886, 895-96 (N.D. Ill. 2006) (concluding that the claimant failed to exhibit deficits in adaptive functioning manifested prior to age 22 because of his eighteen-year work history, even though he suffered from learning disabilities and received poor marks in special education classes); *Cooper v. Massanari*, No. 00 C 8083, 2001 WL 1464930, at *8-9 (N.D. Ill. Nov. 15, 2001) (finding that although the claimant had taken special education classes

and had only a ninth grade education, her work history and functional activities were ample evidence to support the ALJ's conclusion that she did not satisfy the adaptive deficits requirement of Listing 12.05C). Here, the record is equivocal on the issue of the existence of adaptive functioning deficits sufficient to satisfy the first prong of Listing 12.05C. *See, e.g.*, *Youngblood*, 2014 WL 841528, at *5 (remanding where the record was equivocal on the issue of the existence of adaptive functioning deficits).

Consequently, this case will be remanded so that the ALJ may properly perform and articulate his analysis concerning whether Toth meets all of the requirements of Listing 12.05, intellectual disability.[6] *See, e.g.*, *Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014) (remanding for additional IQ testing to better evaluate the claimant's intellectual ability with respect to Listing 12.05); *Scott v. Barnhart*, 297 F.3d 589, 595-96 (7th Cir. 2002) (remanding where the ALJ failed to provide meaningful discussion of certain medical evidence relevant to whether the child claimant satisfied the equivalent of Listing 12.05 for children); *Anderson*, 2011

---

[6] Toth asks that the Court order the Commissioner upon remand to apply the version of Listing 12.05C in effect on September 15, 2016, the date of the ALJ's decision. (DE 18 at 20-22). But the Revised Medical Criteria for Evaluating Disorders specifically negates such a request in its discussion of the revised listing's effective date of January 17, 2017:

> This means that we will use these final rules on and after their effective date, in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decision. *If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand.*

2016 WL 5341732, at *66138 n.1 (emphasis added). Therefore, the Social Security Administration intended that the revised listing be applied on cases remanded to the Agency on or after January 17, 2017. Furthermore, as Toth acknowledges in her brief, the Seventh Circuit has assumed on at least one occasion that the Social Security Administration has the right to promulgate rules retroactively. (DE 24 at 4 (citing *Barthelemy v. Barnhart*, 107 F. App'x 689, 693 (7th Cir. 2004))). Accordingly, the Court declines to order the Commissioner upon remand to apply the version of Listing 12.05C that was in effect at the time of the ALJ's decision.

WL 4899990, at *7 (remanding the ALJ's step-three finding where the ALJ "cherry-picked" the evidence and failed to minimally articulate his reasoning as to the first prong of Listing 12.05C); *Gill v. Astrue*, No. 09-cv-719, 2011 WL 4708046, at *6-7 (S.D. Ill. Oct. 14, 2011) (remanding where the ALJ did not discuss deficits in adaptive functioning with respect to Listing 12.05); *Vander Linden v. Astrue*, No. 09-C-534, 2010 WL 1417931, at *6-7 (E.D. Wis. Apr. 7, 2010) (remanding where the ALJ did not reference Listing 12.05 and provided nothing more than a superficial analysis). Because a remand is warranted on Toth's first argument, the Court need not reach Toth's remaining argument.

## IV. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is REVERSED, and the case is REMANDED to the Commissioner in accordance with this Opinion and Order. The Clerk is directed to enter a judgment in favor of Toth and against the Commissioner.

SO ORDERED.

Entered this 8th day of January 2019.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge